## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHASE COLBORN, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 5:19-cv-431 |
| | ) | |
| FOREST GOOD EATS, LLC d/b/a REAL | ) | **COMPLAINT** |
| MCCOYS; JOHN BENJAMIN THOMAS; | ) | |
| JONATHAN WISENBAKER, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

COMES NOW, Chase Colborn ("Plaintiff"), by and through undersigned counsel, complaining of

the above-named Defendants, alleges and avers as follows:

### PRELIMINARY STATEMENT

1. Plaintiff is a former employee of Defendants.

2. This action is brought for unpaid minimum wages, unpaid overtime compensation,

liquidated damages, and all related penalties and damages under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff was an employee of Defendant for approximately two

(2) years. During his employment, Plaintiff worked for Defendants as both a bartender and a

Social Media Manager but was not properly compensated for all of his hours worked for the period

of May 2017 to June 2019 ("Relevant Time Period"). For his work as a bartender, Defendants

willfully failed and refused to compensate Plaintiff any wages whatsoever, including for all

straight time hours worked, and for hours worked in excess of forty (40) in a week at a rate of time

and one-half their regular rate, due and owing to Plaintiff, in direct violation of the FLSA, 29

U.S.C. § 201 *et seq.* Additionally, for Plaintiff's work as Social Media Manager, Defendants

misclassified Plaintiff as an independent contractor, willfully failing to compensate Plaintiff for

all hours worked, willfully failing to pay Plaintiff the statutory minimum wage rate for all hours worked, willfully failing to compensate Plaintiff at the appropriate overtime rate for overtime hours worked and violating statutory record-keeping provisions.

3.     Plaintiff also brings this action against Defendants for failing to pay Plaintiff straight-time compensation, overtime compensation, and all owed, earned, and/or promised wages, on his regular pay date, in direct contravention of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*.

4.     Defendants' pay practices and policies were in direct violation of the FLSA and the NCWHA.  Accordingly, Plaintiff seeks unpaid straight-time compensation, unpaid owed, earned, and/or promised wages, and unpaid overtime compensation, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

6.     The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendants conduct business in Wake County, North Carolina which is located within this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants conducted business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

8.     The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

9.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state

claims because they arise out of the same nucleus of operative facts as the FLSA claim.

10. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

11. The evidence establishing liability for both causes of action will be similar, and neither issue will predominate nor create confusion for a jury.

## PARTIES

12. Plaintiff is an adult resident of the State of North Carolina, residing at 1045 Woodland Grove Way, Wake Forest, North Carolina 27587. He worked for Defendants as an hourly-paid bartender from approximately May 2017 through August 2018 and occasionally bartended from approximately August 2018 through June 2019. In August 2018 through his termination in June 2019, Plaintiff primarily worked for Defendants as the Social Media Manager.

13. Defendant Forest Good Eats, LLC d/b/a Real McCoys ("Defendant Real McCoys") is a domestic Limited Liability Company, registered in the State of North Carolina since July 13, 2018, with its principal place of business in North Carolina located at 3325 Rogers Road, Wake Forest, North Carolina 27587. At all relevant times, Defendant Real McCoys has been an employer of Plaintiff, and is thus liable as an employer, joint employer, single enterprise and/or otherwise according to statutory law.

14. Defendant John Benjamin Thomas ("Defendant Thomas") is an adult citizen and resident of Wake County, North Carolina, residing at 1005 Jumper Dr., Wake Forest, North Carolina 27587. Defendant Thomas owns and operates Defendant Real McCoys, and Defendant Thomas directly controlled, supervised, managed, set pay rates and methods of payment, had the power to hire and fire, maintained employment records, and issued payments for Plaintiff during the period relevant to this action.

15. Defendant Jonathan Wisenbaker ("Defendant Wisenbaker") is an adult citizen and

resident of Wake County, North Carolina, residing at 3816 Crimson Clover Ave., Wake Forest, North Carolina 27587. Defendant Wisenbaker owns and operates Defendant Real McCoys, and Defendant Wisenbaker directly controlled, supervised, managed, set pay rates and methods of payment, had the power to hire and fire, maintained employment records, and issued payments for Plaintiff during the period relevant to this action.

16.     Upon information and belief, during the period relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Plaintiff, pursuant to the NCWHA, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiff, and each Defendant directly received the benefit of Plaintiff's labor. More information about the nature and role of each Defendant within the enterprise is provided below.

## COVERAGE

17.     At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer with respect to Plaintiff.

18.     At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

19.     At all times material to this action, Plaintiff was an employee within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

20.     At all times material to this action, Defendants were an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose, as defined by the FLSA, 29 U.S.C. § 203(r).

21.     At all times material to this action, Defendants were joint employers pursuant to 29 C.F.R. § 791.2.

22.     At all times material to this action, Defendants were an enterprise engaged in

commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

23.    Defendants operate a restaurant with the mission to provide food, service, and entertainment to the public.

24.    Defendants Thomas and Wisenbaker assumed ownership of Defendant Real McCoys in August of 2018 and continued operating Defendant Real McCoys under the same name, at the same location, and continued employing employees who worked for Defendant Real McCoys under the previous owners.

25.    In May 2017, Plaintiff began his employment with Defendant Real McCoys as a bartender.

26.    While working as a bartender, Plaintiff was responsible for receiving and preparing drink orders for customers in the bar area as well as the dining room, and generally interacting with customers and ensuring their needs were met.  As a bartender, Plaintiff was also required to attend staff meetings and trainings, work special events, assist with training staff, participate in "bar cleans," perform inventory, and assist with closing the bar/restaurant at the end of each shift.

27.    For shifts worked Monday through Thursday, Plaintiff was typically scheduled to work seven-hour bartending shifts, from approximately 5:00 p.m. to 12:00 a.m. For shifts worked on a Friday or Saturday, Plaintiff was typically scheduled to work ten-hour shifts, from

approximately 5:00 p.m. to 3:00 a.m. For shifts worked on Sunday mornings, Plaintiff typically scheduled to work seven-hour bartending shifts, from approximately 10:00 a.m. to 5:00 p.m.

28.     Plaintiff was required to clock into work using Defendants' timekeeping system, Revel, at the start of each shift and clock out using the same system at the end of the shift, or when the last customer left. However, Defendants required Plaintiff to perform side work "off the clock" ("OTC side work") in addition to the scheduled bartending shifts described above.

29.     Such OTC side work included at least one hour of post-shift cleaning and closing of the bar after each shift, monthly inventory, staff meetings, and bar cleans, which was all nonvoluntary work Defendants required Plaintiff to perform.

30.     During his first year of employment, Plaintiff typically worked five shifts a week, working Monday or Wednesday and Thursday through Sunday. On average, he worked approximately fifty-five (55) hours per week, which included bartending and performing OTC side work.

31.     During his first year of employment as a bartender, Plaintiff never received a paycheck or any direct wages from Defendants whatsoever. Plaintiff exclusively worked for tips.

32.     Defendants also required Plaintiff to remit a percentage of total sales to food runners and barbacks from his tips, even though he was not paid any wages. On average, Plaintiff paid approximately $30.00 per shift for the percentage of total sales for food runners and barbacks.

33.     While Plaintiff clocked in/out as required by Defendants, Defendants did not provide Plaintiff copies of Plaintiff's timesheets.

34.     Given Defendants' practice of requiring Plaintiff to bartend and engage in OTC side work without compensation, Plaintiff is owed wages for all work performed, including, but not limited to, any unpaid overtime for hours worked over forty (40) in one week. For example,

for only one week where Plaintiff worked approximately fifty-five (55) hours per week at $7.25 an hour, Plaintiff is due $398.75 for straight time wages and $54.38 for the additional half-time or unpaid overtime wages. This adds up to a total of $453.13.

35. Beginning in May of 2018, Plaintiff, still primarily working as a bartender, was also required to take on social media responsibilities for Defendants.

36. While assisting with Defendant Real McCoys's social media presence and increased marketing efforts, Plaintiff was responsible for posting pictures and content related to daily specials, promotions, and other special events at the restaurant and responding to various emails and messages, including social media comments, complaints, and inquiries.

37. Plaintiff was required to spend time performing social media related tasks throughout the course of the day and night, regardless of whether he was at the restaurant or at home.

38. On average, Plaintiff dedicated three (3) hours a day, or approximately twenty (20) hours a week, updating Defendant Real McCoys's social media accounts including preparing and posting new content as well as responding to comments and complaints. These additional 20 hours of work were in addition to the average 55 hours per week he already spent engaged in bartending and side work responsibilities. As such, beginning in May 2018, Plaintiff began working an average of 75 hours per week.

39. For his work related to social media and marketing, Plaintiff received $200 per week. Plaintiff did not exercise judgment in discretion in hiring and firing, and he did not have the authority to recommend pay increases. Moreover, his $200.00 weekly salary was insufficient to qualify for any executive, administrative, or professional exemption, because he did not earn a minimum of $455 per week.

40.     From May 2018 until August 2018, Plaintiff regularly worked a minimum weekly schedule of seventy-five (75) hours per week (average 55 hours for bartending and 20 hours for social media work).

41.     Given Defendants' practice of requiring Plaintiff to bartend and engage in OTC side work without compensation as well as complete social media tasks for only $200 per week, Plaintiff is owed wages for all work performed, including, but not limited to, any unpaid overtime for hours worked over forty (40) in one week.  For example, for only one week where Plaintiff worked approximately seventy-five (75) hours per week at the required minimum of $7.25 an hour, Plaintiff is due $344.25 for straight time wages and $80.50 for the additional half-time or unpaid overtime wages.  This adds up to a total of $424.75.

42.     In August 2018, Defendants promoted Plaintiff to full-time Social Media Manager. With Plaintiff's promotion came more responsibilities.  Plaintiff planned, photographed, and promoted daily specials; developed content for Defendants' website, press releases, and promotional collaborations with other businesses; coordinated and promoted special events; solicited, secured, and advertised musical acts; and attended weekly manager meetings.

43.     In planning special events and maintaining Defendants' website, Plaintiff frequently used personal funds.  Despite using personal funds, Defendants did not reliably reimburse Plaintiffs for such expenses. On average, Plaintiff spent approximately $10.00 a week to perform his duties as Social Media Manager. Effectively, Plaintiff was the all-around brand and marketing manager for the restaurant.

44.     To help facilitate Plaintiff in his role as Social Media Manager, Defendants provided Plaintiff with a company email account as well as official business cards bearing Defendant Real McCoys's logo.

45.     Following Plaintiff's formal promotion in August 2018, Plaintiff did not work a set schedule because Defendants required his availability at all times, to meet Defendants' demands. Accordingly, Plaintiff worked, on average, thirty-six (36) hours a week as Social Media Manager.

46.     Defendants did not require Plaintiff track his time or otherwise record any hours worked for his role as Social Media Manager.

47.     During this time period (August 2019 through December 2019), Plaintiff worked, on average and as described above, eighty-eight (88) hours a week. His responsibilities included, but were not limited to, Social Media Manager, bartending four shifts a week, and doing OTC side work.

48.     Despite Plaintiff's active role in Defendants' business operations and as a representative of the restaurant to the public generally, Defendants misclassified Plaintiff as an independent contractor for his work done as Defendants' Social Media Manager and continued to pay Plaintiff $200 per week to compensate him for his work as Social Media Manager.

49.     Given Defendants' practice of requiring Plaintiff to work bartending shifts and perform additional side work for no compensation and Plaintiff's role as Social Media Manager for only $200 per week, Plaintiff is owed compensation for all work performed, including any overtime compensation for hours worked over forty (40) in one week. For example, for only one week where Plaintiff worked approximately eighty-eight (88) hours per week at the required minimum of $7.25 an hour, Plaintiff is due $438.24 for straight time wages and $109.54 for the additional half-time or unpaid overtime wages. This adds up to a total of $547.78.

50.     Beginning in January 2019 and following a discussion with Defendants about his unpaid wages, Plaintiff further reduced the number of bartending shifts each week, working approximately three (3) bartending shifts a week, Friday through Sunday. From January 2019 to

his termination in June 2019, Plaintiff worked approximately seventy-four (74) hours per week as Social Media Manager, bartending, and doing OTC side work.

51.     Given Defendants' practice of requiring Plaintiff to work bartending shifts and perform additional side work for no compensation and Plaintiff's role as Social Media Manager for only $200 per week, Plaintiff is owed compensation for all work performed, including any overtime compensation for hours worked over forty (40) in one week.  For example, for only one week where Plaintiff worked approximately seventy-four (74) hours per week at the required minimum of $7.25 an hour, Plaintiff is due $336.70 for straight time wages and $77.52 for the additional half-time or unpaid overtime wages.  This adds up to a total of $414.22.

52.     Defendants, in their sole discretion, controlled Plaintiff's rate of pay for work performed as Social Media Manager.

53.     Defendants have violated the statutory rights of Plaintiff under both the FLSA and NCWHA, which resulted in damages to Plaintiff in the form of unpaid straight-time compensation, unpaid overtime premiums for all overtime work required, suffered, or permitted by Defendants, unlawful deductions, liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

54.     Defendants have knowingly, willfully, or with reckless disregard carried out an illegal practice of failing to pay Plaintiff straight-time wages and overtime compensation for all worked pursuant to the FLS and the NCWHA.  Defendants willfully violated the statutory rights of Plaintiff, under the FLSA and NCWHA, entitling Plaintiff to an additional amount as liquidated damages pursuant to N.C. Gen. Stat. §§ 95-25.22(a)(1) and (d), for prejudgment interest and an award of attorneys' fees and costs.

## COUNT ONE
### (Violations of the Fair Labor Standards Act)

50. Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

51. Plaintiff was employed by Defendants but was not paid any direct wages and was compensated only with tips for worked performed as a bartender or general restaurant labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

52. Additionally, Plaintiff, for his work performed as a Social Media Manager and bartender, was not paid the statutory minimum wage for all work performed or the proper overtime rate of one and one half times the regular hourly rate for hours worked over forty (40) in a week.

53. Pursuant to the FLSA, 29 U.S.C. § 207, an employer must pay non-exempt employees at time and one-half their regular hourly rate for all hours worked over forty (40) in a single workweek.

54. Defendants required Plaintiff to work at below the federal minimum wage.

55. Plaintiff typically worked greater than forty (40) hours per week.

56. Plaintiff did not receive any overtime premiums for overtime hours worked, as required under the FLSA.

57. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

58. The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

59. Plaintiff, who at times worked in a tipped position as bartender, did not receive any direct wages from Defendants, including the minimum wage or the minimum wage minus the

permissible tip credit, as required under the FLSA.

60.    Upon information and belief, Defendants knowingly and willfully failed to pay Plaintiff any direct wages, and/or overtime wages, in violation of the FLSA.

61.    The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

62.    As set forth above, Plaintiff has sustained losses in his compensation, a proximate result of Defendants' violations.  Accordingly, Plaintiff seeks damages in the amount of their respective unpaid straight-time wages, overtime compensation, and liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

63.    Plaintiff seeks recovery of her attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## THE THREE-YEAR STATUTE OF LIMITATIONS SHOULD APPLY TO THIS CASE BECAUSE THE NON-PAYMENT OF OVERTIME IN VIOLATION OF 29 U.S.C. § 207(a)(1) WAS WILLFUL
### (ALL DEFENDANTS)

64.    Plaintiff incorporates the preceding paragraphs as set forth above, and states that that the three-year provision of 29 U.S.C. § 255(a) should apply in this case because the violation of 29 U.S.C. § 207(a)(1) was willful.

65.    All Defendants required Plaintiff to work substantial hours in excess of forty (40) per week and regularly required Plaintiff perform work for Defendant Real McCoys off-the-clock or at a rate below the applicable minimum wage and at times for no wages at all.

## COUNT TWO
### (Violations of the North Carolina Wage and Hour Act)

66.    Plaintiff incorporates by reference all preceding paragraphs as if the same were set

forth again fully at this point.

67.     It is unlawful under North Carolina law for an employer to "suffer or permit" an employee to work without paying promised and earned wages for all hours worked, pursuant to N.C. Gen. Stat. § 95-25.6.

68.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, Defendants were required to pay every employee all wages . . . accruing to the employee on the regular payday," including owed, earned, accrued, and/or promised wages."  This requirement is not covered by the minimum wage or overtime provisions under the FLSA.

69.     The NCWHA includes in its definition of "wage," among other forms of compensation, "commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments."

70.     The NCWHA also requires, under N.C. Gen. Stat. § 95-25.7, that when an employee's employment is discontinued for any reason, the employee "shall be paid all wages due on or before the next regular payday," and that "[w]ages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs."

71.     Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).  Pursuant to N.C. Gen. Stat. § 95-25.13(1)-(2), Defendants maintained a poster that notified Plaintiff that he would be paid at least minimum wage and time and one-half for hours over 40 per week.

72.     Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, all Defendants

were required to pay Plaintiff all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

73.    In January of 2019, after a meeting regarding the increased work Plaintiff was performing in relation to his social media work, Defendants promised Plaintiff a $25 booking bonus for each band or live music performance he booked for the restaurant.

74.    This booking bonus was a promised wage to be paid *in addition to* the social media manager $200 salary Defendants paid Plaintiff each week.

75.    Pursuant to this promise, Plaintiff performed the work necessary to secure two musical performances per week for the remainder of the year.

76.    To date, Plaintiff not received compensation for approximately fifty-six (56) of the outstanding performances.

77.    Plaintiff's hourly wages for work performed as a bartender were to be regular, nondiscretionary, systemic, based on a fixed formula, and paid out as Plaintiff continued to be employed by Defendants.  Defendants' failure to pay such wages is therefore a violation of the NCWHA.

78.    All Defendants intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff in violation of the NCWHA.

79.    Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8(a)(3), an employer may only withhold or divert any portion of an employee's wages, "when the amount of the proposed deduction is not known and agreed upon in advance," after meeting several requirements,

including, but not limited to: (1) receiving written authorization from each employee; (2) providing the reason for each deduction; (3) providing advance written notice of the actual amount to be deducted; and (4) providing written notice to employees of their right to withdraw authorization.

80. Defendant violated N.C. Gen. Stat. § 95-25.8(a)(3) by not receiving sufficient authorization from Plaintiff, including, but not limited to, failing to provide advance written notice of the actual amount to be deducted, or failure to provide written notice of employees' right to withdraw authorization

81. As set forth above, under the NCWHA, Plaintiff has sustained losses and lost compensation as a proximate result of Defendants' violations. Accordingly, Plaintiff seeks damages in the amount of his unpaid earned compensation, unlawful deductions, liquidated damages, and prejudgment interest at the legal rate set forth under N.C. Gen. Stat. § 95-25.22.

82. Plaintiff also seeks recovery of his attorneys' fees and costs, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Award Plaintiff actual damages for reimbursement of work-related costs, unpaid wages and liquidated damages equal in amount to the unpaid compensation found due to Plaintiff as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1) and pursuant to the FLSA, 29 U.S.C. § 216(b);

2. Award Plaintiff pre- and post- judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

3. Award Plaintiff attorneys' fees, costs, and disbursements, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

4.     Award Plaintiff further legal equitable relief as this Court deems necessary, just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this September 27, 2019.

<u>*/s/ Gilda A. Hernandez*</u>
Gilda A. Hernandez (NCSB No. 36812)
Charlotte C. Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Dr., Ste. 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiff*