IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-431-D

CHASE COLBORN,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )          **ORDER**
                                        )
FOREST GOOD EATS, LLC                   )
d/b/a REAL MCCOYS,                      )
JOHN BENJAMIN THOMAS,                   )
and JONATHAN WISENBAKER,                )
                                        )
                    Defendants.         )

On September 27, 2019, Chase Colborn ("Colborn" or "plaintiff") filed a complaint against Forest Good Eats, LLC, d/b/a "Real McCoys" ("FGE"), John Benjamin Thomas ("Thomas"), and Jonathan Wisenbaker ("Wisenbaker"; collectively with FGE and Thomas, "defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq. [D.E. 1]. On December 11, 2019, defendants moved to dismiss [D.E. 15], and on December 16, 2019, defendants moved to stay [D.E. 17]. On December 17, 2019, Colborn amended his complaint [D.E. 19] and responded in opposition to defendants' motions [D.E. 20, 21]. On December 31, 2019, Colborn moved to dismiss defendants' counterclaims [D.E. 24] and filed a memorandum in support [D.E. 25].

On January 14, 2020, defendants answered the amended complaint and re-asserted their counterclaims [D.E. 28]. Specifically, defendants allege four counterclaims under North Carolina law: (1) tortious interference with contract, (2) breach of contract, (3) breach of implied duty of good faith and fair dealing, and (4) unfair and deceptive trade practices (a "UDTPA" claim). See id. On January 28, 2020, Colborn moved to dismiss defendants' counterclaims [D.E. 38] and filed

a memorandum in support [D.E. 39]. On February 14, 2020, defendants responded in opposition [D.E. 50] and moved to strike certain exhibits Colborn attached to his memorandum at docket entry 39, and for discovery [D.E. 46, 48]. On February 27, 2020, Colborn replied [D.E. 52]. On June 16, 2020, Magistrate Judge Jones issued a memorandum and recommendations ("M&R") [D.E. 62]. As explained below, the court adopts the M&R and grants Colborn's motion to dismiss defendants' counterclaims.

## I.

On August 26, 2018, Thomas and Wisenbaker started FGE, a restaurant in Wake Forest, North Carolina. See [D.E. 28] 16. On the same date, FGE entered into a contract with Colborn for Colborn to provide social media marketing including, inter alia, managing FGE social media accounts, coordinating events FGE hosted, making social media posts concerning events, specials, and entertainment, and responding to customer communications. See id. Defendants referred to Colborn as the "Social Media Manager." Id. at 17. In this role, Colborn independently decided how to perform the services under the contract. Accordingly, defendants gave Colborn the ability to access FGE's social media accounts and website. See id. This contractual agreement was separate and apart from Colborn's work for FGE as a bartender. See id.

At some point between August 26, 2018, and October 3, 2018, Colborn recommended that FGE hire his brother, Bryan Reynolds ("Reynolds"), to create, design, and host the FGE website. See id. On October 3, 2018, FGE contracted with Reynolds to create and design FGE's website and administer the site for an indefinite period of time. In return, FGE paid Reynolds $600.00. See id. Reynolds designed the website to allow customers to place to-go food orders, to notify customers about specials, events, the restaurant's location and contact information, and to provide information concerning FGE's catering services. See id. at 18. As administrator of FGE's website, Reynolds could edit, change, publish, or unpublish the site. See id. at 18–19. "Unpublishing" a website involves either removing a site from the internet, or blocking public access to the site. See id. at 19.

2

Reynolds provided defendants with log-in information and limited access to the site, but defendants could not unpublish the site. See id.

On June 1, 2019, Colborn stopped working with FGE as a bartender and terminated the contract concerning social media services. See id. Colborn demanded defendants pay him $1,375 for "booking fees" related to entertainment he scheduled at FGE as the social media manager. Defendants responded that they were not obligated to pay booking fees. Id. at 19–20.

On June 11, 2019, the FGE website was unpublished. See id. at 20. Defendants asked Reynolds about the site, and Reynolds responded that he was "not in a position" to continue hosting the site unless defendants satisfied certain conditions, including paying Colborn's requested booking fees. Id. Defendants allege that Colborn instructed Reynolds to unpublish the FGE site until FGE payed Colborn the booking fees. See id. The FGE site that Reynold's designed remains unpublished. See id. at 21.

Defendants sought and hired another website developer. On July 2, 2019, the new developer published a new website for FGE. See id. From June 11, 2019, to July 2, 2019, defendants did not have an operational website. See id.

## II.

### A.

In the M&R, Magistrate Jones recommended that the court: (1) deny as moot defendants' motions to strike and for discovery [D.E. 32, 35]; (2) deny defendants' second motion to strike [D.E. 46] as to exhibits A, B, C, E, F-1, F-2, F-4, G-1, and G-2, and grant the motion to strike as to exhibit F-3; and (3) deny defendants' motion for discovery [D.E. 48]. See [D.E. 62]. Neither party objected to the M&R.

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th

3

Cir. 2005) (alteration, emphasis, and quotation omitted); see 28 U.S.C. § 636(b)(1). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (quotation omitted).

The court has reviewed the M&R and the record. The court is satisfied that there is no clear error on the face of the record. Accordingly, the court adopts the conclusions in the M&R [D.E. 62].

As for defendants' motions to dismiss and to stay Colborn's original complaint [D.E. 15, 17] and Colborn's motion to dismiss defendants' counterclaims [D.E. 24], "[t]he general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect." Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001); see Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017). More specifically, "because a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case, it renders the original complaint of no effect." Fawzy, 873 F.3d at 455 (quotation omitted); see Young, 238 F.3d at 572.

On December 17, 2019, Colborn amended his complaint as of right. See [D.E. 19]; Fed. R. Civ. P. 15(a)(1)(B). Thus, the original complaint is not operative, and the court dismisses as moot defendants' motions to dismiss and to stay. See Fawzy, 873 F.3d at 455; Young, 238 F.3d at 572.

After Colborn moved to dismiss defendants' counterclaims under Rule 12(b)(1), defendants amended their answer as of right. See [D.E. 28]; Fed R. Civ. P. 15(a)(1)(B). Thus, defendants' original answer is no longer operative, and the court dismisses as moot Colborn's motion to dismiss defendants' counterclaims. See Fantasy, Inc. v. Fogarty, 984 F.2d 1524, 1529 n.2 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994); Maaco Franchisor SPV, Inc. v. Kennevan, LLC, 3:20-cv-149-MOC-DCK, 2020 WL 2926465, at *1 (W.D.N.C. June 3, 2020) (unpublished); cf. Fawzy, 873 F.3d at 455; Young, 238 F.3d at 572.

**B.**

As for Colborn's remaining motion to dismiss defendants' counterclaims in the amended answer, a motion to dismiss under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). In making that determination, the court "may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." Velasco v. Gov't of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004); see Al Shimari v. CACI Premier Tech., Inc., 840 F.3d 147, 154 (4th Cir. 2016); In re KBR, Inc. v. Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2015); Williams v. United States, 50 F.3d 299, 304 (4th Cir. 2005) (noting that "the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction."). If, however, "jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." Kerns v. Williams, 585 F.3d 187, 193 (4th Cir. 2009); see Al Shimari, 840 F.3d at 154. As the parties asserting that this court has subject-matter jurisdiction over the counterclaims, defendants must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 103–04; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 967–68 (4th Cir. 1992); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

The court does not have diversity or federal question jurisdiction over defendants' North Carolina state-law counterclaims. Cf. 28 U.S.C. §§ 1331, 1332. Thus, the court must assess whether the counterclaims are "compulsory" or "permissive." If permissive, the court must determine whether the court has subject-matter jurisdiction over the counterclaims under 28 U.S.C. § 1367(a).

5

See, e.g., Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). The Fourth Circuit requires that a permissive counterclaim have its own "independent jurisdictional base." Id. In contrast, a compulsory counterclaim need not have its own independent jurisdictional base. See id.; see also Vaughan v. Recall Total Info. Mgmt., Inc., 217 F. App'x. 211, 223 n.18 (4th Cir. 2007) (per curiam) (unpublished); Peter Farrell Supercars, Inc. v. Monsen, 82 F. App'x. 293, 298 (4th Cir. 2003) (per curiam) (unpublished). Accordingly, the court first determines whether the counterclaims are compulsory or permissive.

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A); see Painter, 863 F.2d at 332. A permissive counterclaim is defined in the negative as "any claim that is not compulsory." Fed. R. Civ. P. 13(b). The Fourth Circuit has identified four questions to ask to help determine whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

Painter, 863 F.2d at 331; see Equitrans, L.P. v. Moore, 725 F. App'x 221, 224 (4th Cir. 2018) (per curiam) (unpublished); Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 219 (4th Cir. 2006); Sue & Sam Mfg. Co. v. B-L-S Constr. Co., 538 F.2d 1048, 1051–53 (4th Cir. 1976). "[T]he res judicata test cannot be the controlling one." Painter, 863 F.3d at 333. These questions help focus the inquiry, but the court "need not answer all these questions in the affirmative for the counterclaim to be compulsory." Id. at 331; see Moore, 725 F. App'x at 224. Rather, a court should interpret Rule 13 "flexibl[y]" and "realistic[ally]" to achieve Rule 13's purpose. Sue & Sam Mfg. Co., 538 F.2d at 1051.

The parties do not dispute the facts relevant to the jurisdictional analysis under Rule 12(b)(1). Accordingly, the court resolves the jurisdictional question without discovery. See Al Shimari, 840

6

F.3d at 154; Kerns, 585 F.3d at 193.

Colborn argues that "the only commonality" between his claims and defendants' counterclaims is "the employer-employee relationship," which does not suffice to make defendants' counterclaims compulsory. See [D.E. 39] 13; [D.E. 52] 7–12. In support, Colborn asserts that his claims concern the hours he worked, what defendants paid him, and what defendants should have paid him, while defendants' counterclaims concern events surrounding the unpublishing of their website on June 11, 2018. See [D.E. 52] 7–12.

Defendants respond that all four Painter factors support finding that their counterclaims are compulsory. As for legal, factual, and evidentiary similarity, defendants assert that the parties must prove "the extent to which [Colborn] was an employee," that is, whether Colborn was a bona fide employee or whether he was an employee and a contractor, for both claims and counterclaims. See [D.E. 50] 8–9. As for res judicata, defendants argue that the claims and counterclaims "rest on evidence regarding [Colborn's] employment and/or contract status with" defendants, and that the counterclaims "would be lost" if not brought in this suit. See id. at 9–10. As for the logical relationship, defendants argue that both claims and counterclaims require the parties to prove Colborn's employment status, and that resolving that question creates a logical nexus between the claims. See id. at 10–11.

The court examines the parties' arguments with respect to all four counterclaims, which all arise under North Carolina law. As for defendants tortious interference with contract counterclaim, a party must prove five elements to state a claim for tortious interference with contract: (1) a valid contract between the plaintiff and a third-party that gives the plaintiff a contractual right against the third-party, (2) the defendant knows of the contract, (3) the defendant intentionally induces the third-party "not to perform the contract," (4) the defendant acts without justification, and (5) the defendant's conduct causes actual damages to the plaintiff. Krawiec v. Manly, 370 N.C. 602, 606–07, 811 S.E.2d 542, 546 (2018); see Embree Constr. Grp. v. Rafcor, Inc., 330 N.C. 487, 498,

7

411 S.E.2d 916, 924 (1992); United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

Defendants' tortious interference counterclaim focuses on FGE's contract with Reynolds and FGE's allegations concerning Colborn's actions to induce Reynolds to unpublish FGE's website. See [D.E. 28] 21–23. The counterclaim is legally dissimilar to Colborn's FLSA and NCWHA claims and requires no analysis of Colborn's employment status with FGE. Cf., e.g., Trejo v. Ryman Hospitality Props., Inc., 795 F.3d 442, 446 (4th Cir. 2015); Powell v. P2Enters., LLC, 247 N.C. App. 731, 733–34, 786 S.E.2d 798, 800 (2016). The counterclaim also is factually dissimilar. The counterclaim concerns Colborn's alleged actions to induce Reynolds to unpublish FGE's website. In contrast, Colborn's FLSA and NCWHA claims concern the amount and types of work Colborn performed, and what FGE paid him for that work. See Am. Compl. [D.E. 19] ¶¶ 55–90. Thus, the evidence to prove defendants' counterclaim is unrelated to the evidence required to demonstrate Colborn's FLSA and NCWHA claims.

Res judicata also is unlikely to bars the tortious interference claim in a subsequent suit. Under North Carolina law, the doctrine of res judicata bars parties from relitigating issues that the parties raised or could have raised in a prior action:

> Where a second action or proceeding is between the same parties as the first action or proceeding, the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding.

King v. Neese, 233 N.C. 132, 136, 63 S.E.2d 123, 126 (1951); see Fickley v. Greystone Enters., Inc., 140 N.C. App. 258, 260, 536 S.E.2d 331, 333 (2000); Young v. Young, 21 N.C. App. 424, 425, 204 S.E.2d 711, 712 (1974) (collecting cases). "The essential elements of res judicata are (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in the prior suit and the present suit, and (3) an identity of parties or their privies in both suits." Pate v. North Carolina Dep't of Transp., 176 N.C. App. 530, 534–35, 626 S.E.2d 661, 665 (2006) (quotation omitted).

8

Here, the causes of action lack a common identity, and the nexus among the claims is weak. Although the primary parties (i.e., Colborn and defendants) are parties to the claims and counterclaim, several inferential leaps are required to connect Colborn's alleged actions concerning Reynolds and the website unpublishing to FGE's wage practices. Alternatively, the res judicata factor does not control the court's analysis, and the three other factors undercut finding defendants' tortious interference claim to be compulsory. See Moore, 725 F. App'x at 224; Smoak, 441 F.3d at 219; Painter, 863 F.2d at 331; Sue & Sam Mfg. Co., 538 F.2d at 1051–53.

In opposition, defendants cite Espinoza v. Mex-Am Café, LLC, No. 1:14CV30, 2015 WL 5431949, at *3 (M.D.N.C. Sept. 15, 2015) (unpublished). In Espinoza, the court held that plaintiff's employment status—whether he was member/manager of the restaurant, or merely an employee—was critical to both plaintiff's FLSA claims and defendants' breach of contract and conversion counterclaims. See id. at *2–3. Not so here. The court could find that Colborn was an FGE employee and that he tortiously interfered with FGE's contract with Reynolds, and vice versa. Thus, Espinoza offers defendants no comfort, and this court concludes that defendants' tortious interference with contract counterclaim is not compulsory.

As for defendants' breach of contract counterclaim, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P. Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quotation omitted); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished); Michael Borovsky Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 311 (E.D.N.C. 2019).

Defendants' breach of contract counterclaim rests on a contractual relationship between FGE and Colborn, and Colborn's alleged inducement of Reynolds to unpublish the site. See [D.E. 28] 23. This counterclaim lacks legal similarity to Colborn's FLSA and NCWHA claims. Cf., e.g., Trejo, 795 F.3d at 446; Powell, 247 N.C. App. at 733–34, 786 S.E.2d at 800. Although the breach of contract counterclaim and Colborn's FLSA and NCWHA claims both generally concern Colborn's contractual relationship with FGE for social media services, the court need not decide whether Colborn was an "employee" under either the FLSA or NCWHA to resolve defendants' counterclaim. Even if the court had to decide whether Colborn was a FGE employee, that connection alone does not suffice to render a counterclaim compulsory when no other factual or legal connection exists. See, e.g., Acker v. States Mortg. Co., No. 3:20-CV-00247-FDW-DCK, 2020 WL 4698809, at *6 (W.D.N.C. Aug. 13, 2020) (unpublished); Williams v. Long, 558 F. Supp. 2d 601, 604 (D. Md. 2008) (collecting cases). The claims also lack a factual similarity and require different evidence. Colborn's claims focus on the work he performed, and what FGE paid him for that work. In contrast, FGE's breach of contract counterclaim focuses on the nature of Colborn and FGE's relationship concerning social media services, and whether Colborn's actions on June 1 or June 11 constitute a breach. As for res judicata, although the issue of whether Colborn contracted with FGE may be precluded, the claim likely is not. As discussed, the logical nexus is weak. Accordingly, defendants' breach of contract counterclaim is not compulsory. See Moore, 725 F. App'x at 224; Smoak, 441 F.3d at 219; Painter, 863 F.2d at 331; Sue & Sam Mfg. Co., 538 F.2d at 1051–53.

In opposition, defendants cite several unpublished cases for the proposition that a determination of plaintiff's employment status suffices to support a finding that the counterclaims are compulsory. See Monsen, 82 F. App'x at 295–96, 298; Whyte v. PP & G, Inc., No. WMN–13–2806, 2014 WL 1340194, at *1 (M.D.N.C. Apr. 2, 2014) (unpublished); Nammari v. Gryphus Enters. LLC, No. 1:08CV134, 2008 WL 11512205, at *1 (E.D. Va. May 12, 2008) (unpublished). The cited cases, however, are distinguishable. In the cited cases, the litigation of the

claims and counterclaims hinged on resolving one core factual dispute.[1] In contrast to the cited cases, the claims and counterclaims in Long required resolution of multiple, different factual disputes. See Long, 558 F. Supp. 2d at 602–04; cf. Painter, 863 F.3d at 331 ("The claim and counterclaim both involved witness testimony directed toward the same critical event."). So too here. Colborn's claims require the court to determine Colborn's employment status with FGE (which ended June 1, 2018), while defendants' counterclaims require the court to determine Colborn's alleged role in unpublishing FGE's site on June 11, 2018, and the impact of Colborn's actions on his alleged contract to provide media services. As discussed, that contract (i.e., the contract at issue in defendants' breach of contract counterclaim) is separate and apart from Colborn's employment agreement with FGE concerning bartending duties. Accordingly, the court rejects defendants' arguments, and holds that defendants' breach of contract counterclaim is not compulsory.

As for defendants' breach of implied duty of good faith and fair dealing counterclaim, "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Williams v. Craft Dev., LLC, 199 N.C. App. 500, 506, 682 S.E.2d 719, 723 (2009) (quotation omitted); see also Bicycle Transit Auth. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985); Maglione v. Aegis Fam. Health Ctrs., 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005). Defendants argue that the contract at issue concerning this counterclaim is the alleged contract between FGE and Colborn for media services. See [D.E. 28] 23–24. That contract, however, is the same contract at issue in defendants' breach of contract counterclaim. Thus, defendants' arguments concerning this

---

[1] In Nammari, the claims and counterclaims depended on whether the plaintiff truthfully disclosed the nature of his termination from employment with defendant. See Nammari, 2008 WL 115122005, at *1–2. In Whyte, the core dispute concerned whether plaintiff was an employee under the FLSA and state labor laws or an independent contractor. See Whyte, 2014 WL 1340194, at *3–5. In Monsen, the claims and counterclaims centered on the defendant's work on the plaintiff's car. See Monsen, 82, F. App'x at 295–96, 298.

11

counterclaim fail for the same reasons as defendants' breach of contract counterclaim. See Moore, 725 F. App'x at 224; Smoak, 441 F.3d at 219; Painter, 863 F.2d at 331; Sue & Sam Mfg. Co., 538 F.2d at 1051–53. Accordingly, defendants' breach of implied duty of good faith and fair dealing counterclaim is not compulsory.

As for defendants' UDTPA counterclaim, a party must demonstrate that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton, 353 N.C. at 656, 548 S.E.2d at 711; see Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). Whether an act or practice is unfair or deceptive is a question of law for the court. See Gray, 352 N.C. at 68, 529 S.E.2d at 681; CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550-D, 2019 WL 1083775, at *5 (E.D.N.C. Mar. 7, 2019) (unpublished). A practice is deceptive "if it has the tendency to deceive." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall, 302 N.C. at 548, 276 S.E.2d at 403.

Defendants' UDTPA counterclaim concerns Colborn's alleged inducement of Roberts to unpublish FGE's website. See [D.E. 28] 24–25. As discussed concerning defendants' tortious interference counterclaim, the "critical event" at issue in defendants' UDTPA counterclaim (i.e., Colborn's actions concerning Roberts) is distinct from the event critical to Colborn's FLSA and NCWHA claims (i.e., his employment status with FGE). Accordingly, defendants' UDTPA counterclaim is not compulsory. See Moore, 725 F. App'x at 224; Smoak, 441 F.3d at 219; Painter, 863 F.2d at 331; Sue & Same Mfg. Co., 538 F.2d at 1051–53.

12

## C.

Alternatively, defendants argue that, if the court finds defendants' counterclaims are permissive, the court should exercise supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a). See [D.E. 50] 11–12. In support, defendants argue that the counterclaims "arise out the same transaction or occurrence, namely [Colborn's] status as an employee and/or contractor and his alleged employment and separation thereof with" defendants. Id. at 11. Defendants also note that their alleged contractual relationship with Colborn overlaps temporally with Colborn's wage claims. See id. at 12.

Under section 1367(a), a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that [it] form[s] part of the same case or controversy under Article III of the United States Constitution," subject to exceptions in subsections (b) and (c). 28 U.S.C. § 1367(a). "[B]efore Congress enacted 28 U.S.C. § 1367 in 1990, the Fourth Circuit held that federal courts did not have jurisdiction over permissive counterclaims absent an independent basis for federal subject-matter jurisdiction." O'Fay, 2010 WL 9478988, at *5; see Painter, 863 F.2d 331–32; Sue & Sam Mfg. Co., 538 F.2d at 1051. Within the Fourth Circuit, district courts continue to recognize this principle as binding even after section 1367's enactment. See, e.g., Suarez v. Camden Prop. Trust, No. 5:18-CV-455-D, 2020 WL 5371916, at *4–5 (E.D.N.C. Sept. 8, 2020) (unpublished); Carroll v. Dan Rainville & Assocs. Inc., No. SAG-17-849, 2017 WL 4777706, at *2–4 (D. Md. Oct. 23, 2017) (unpublished); CSR, Inc. v. Foster-Bey, No. 1:16cv1227 (JCC/IDD), 2017 WL 1929439, at *3 (E.D. Va. May 10, 2017) (unpublished); Ginwright v. Exeter Fin. Corp., No. TDC-16-0565, 2016 WL 5867443, at *2 (D. Md. Oct. 6, 2016) (unpublished) (collecting cases); Moskovvitz v. Jacobson Holman, PLLC, No. 1:15-CV-336, 2015 WL 4255100, at *3 (E.D. Va. July 13, 2015) (unpublished); Williams v. Long, 558 F. Supp. 2d 601, 603 (D. Md. 2008); BidZirk, LLC v. Smith, No. 6:06-109-HMH-WMC, 2006 WL 3242333, at *2 (D.S.C. Nov. 7, 2006) (unpublished); Harrison v. Grass, 304 F. Supp. 2d 710, 712–13

13

(D. Md. 2004); Carbon Fuel Co. v. USX Corp., 867 F. Supp. 414, 416–17 (S.D. W. Va. 1994). But see Sweeney v. Pennsylvania Nat'l. Mut. Cas. Ins. Co., 1:05CV00931, 2006 WL 8447919, *1–2 (M.D.N.C. July 11, 2006) (unpublished).

The court recognizes that the First, Second, and Seventh Circuits have held that a court's supplemental jurisdiction under section 1367 extends to Article III's "cases and controversies" limit. See Global NAPs, Inc. v. Verizon New England, Inc., 603 F.3d 71, 76 (1st Cir. 2010); Jones v. Ford Motor Credit Co., 358 F.3d 205, 212–15 (2d Cir. 2004); Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 384–86 (7th Cir. 1996); cf. Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 990 (3d Cir. 1984).[2] A leading federal courts treatise also endorses this view. See 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, Federal Practice and Procedure § 3567.1 (3d ed. 2008). Nonetheless, the court also recognizes that there is more than a colorable argument to the contrary based on the theory that section 1367 "codified" existing common law doctrines of pendent and ancillary jurisdiction "under a common heading" of supplemental jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997); Ginwright, 2016 WL 5867443, at *2.

The Fourth Circuit has not examined its holdings in Painter and Sue & Sam Mfg. Co. in a published opinion after Congress enacted section 1367 and has continued to apply the precedent in

---

[2] The Third Circuit abandoned the requirement that permissive counterclaims always require an independent jurisdictional basis before Congress enacted the supplemental jurisdiction statute. See Ambromavage, 726 F.2d at 990. Since Congress enacted 28 U.S.C. § 1367, the Third Circuit has not addressed the compulsory-permissive distinction for purposes of analyzing federal subject-matter jurisdiction, and district courts within the Third Circuit continue to disagree on whether an independent jurisdictional basis is required for permissive counterclaims. Compare Wilson v. Wings Over Happy Valley MDF, LLC, No. 4:17-CV-00915, 2018 WL 437385, at *2–*5 (M.D. Pa. Jan. 16, 2018) (unpublished) and Alpern v. Cavarocchi, No. 98-3105, 1999 WL 257695, at *9–*11 (E.D. Pa. Apr. 28, 1999) (unpublished) (requiring no independent basis for permissive counterclaims if section 1367(a) is satisfied) with Stewart v. Lamar Adver. of Penn LLC, No. 03-2914, 2004 WL 90078, at *1, *3 (E.D. Pa. Jan. 14, 2004) (unpublished) (requiring independent jurisdictional basis) and S. Megga Telecomms. Ltd. v. Lucent Techs., Inc., No. 96-357-SLR, 1997 WL 86413, at *9 (D. Del. Feb. 14, 1997) (unpublished) (same).

unpublished cases. See, e.g., Ginwright, 2016 WL 5867443, at *2; cf. Vaughan, 217 F. App'x. at 218 n.18; Monsen, 82 F. App'x. at 298; Shanaghan v. Cahill, 58 F.3d 106, 109–10 (4th Cir. 1995). It is the Fourth Circuit, not this court, that has the power to abrogate Fourth Circuit precedent. See, e.g., United States v. Middleton, 883 F.3d 485, 491 (4th Cir. 2018) ("Prior decisions of a panel of the court are binding . . . unless and until overturned en banc."); Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir. 1987) ("[T]he decisions of a superior court in a unitary system bind the inferior courts."); cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overrule its own decisions."). Accordingly, this court must follow Painter and Sue & Sam Mfg. Co. Thus, defendants' counterclaims must have an independent jurisdictional base for this court to exercise supplemental jurisdiction. Because defendants' counterclaims lacks such a base, the court grants Colborn's motion to dismiss.

III.

In sum, the court ADOPTS the M&R [D.E. 62], DENIES as moot plaintiff's first motion to dismiss [D.E. 24], DENIES as moot defendants' motions to dismiss and to stay [D.E. 15, 17], and GRANTS plaintiff's motion to dismiss defendants' counterclaims [D.E. 38] for lack of subject-matter jurisdiction.

SO ORDERED. This 18 day of September 2020.

JAMES C. DEVER III
United States District Judge

Case 5:19-cv-00431-D   Document 63   Filed 09/21/20   Page 15 of 15